UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WILLIAMSON,

    Plaintiff,

v.

USF HOLLAND, LLC,

    Defendant.

Case No. 2:17-cv-13326-LJM-APP
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]**

Thomas Williamson tells this Court that USF Holland failed to accommodate his disabilities and then terminated his employment based on his disabilities and for seeking accommodations. But when Williamson filed for bankruptcy, he did not tell the bankruptcy court the same thing. In particular, he omitted his claim against USF Holland, deemed an asset, from his bankruptcy petition. And he only disclosed the claim to the bankruptcy court after his bankruptcy plan was confirmed. USF Holland thus argues that Williamson's failure to report his claim to the bankruptcy court judicially estops him from pursuing the claim here. Williamson has some evidence that the omission was not his fault but instead his bankruptcy attorney's. Yet the record reflects that Williamson, personally, should have done more to see that the bankruptcy court or bankruptcy trustee knew about his suit against USF Holland before the bankruptcy court confirmed his payment plan. As such, the Court will grant USF Holland's motion for summary judgment premised on judicial estoppel.

**I.**

As USF Holland has moved for summary judgment, the Court presents the record in the light most favorable to Williamson.

In February 2017, Williamson filed a charge with the Equal Employment Opportunity Commission. Williamson accused his former employer, USF Holland, of denying him a reasonable accommodation for his disability. (ECF No. 20, PageID.293.) He further asserted that USF Holland had discharged him on account of his disability and in retaliation for seeking accommodations. (*Id.*) Williamson charged USF Holland with violating the Americans with Disabilities Act. (*Id.*)

Two months later, in April 2017, Williamson, through a bankruptcy law firm, filed a Chapter 13 bankruptcy petition. The petition consists of a number of schedules. Schedule A/B is particularly relevant to this case. And, in particular, Question 34. Here is how Williamson answered Question 34 of Schedule A/B:

34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims
   ■ No
   ☐ Yes. Describe each claim.........

(*Id.*) Williamson also submitted a declaration in connection with his Chapter 13 petition: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." (ECF No. 17, PageID.139.) So, in short, Williamson did not disclose his claim against USF Holland in his bankruptcy petition and averred that his schedules were "true and correct."

But, Williamson explains, the omission was not his fault. Before he filed his Chapter 13 petition, Williamson spoke with his bankruptcy attorney about the EEOC charge. In Williamson's words: "During my meeting with the bankruptcy attorney I told him I had filed a Charge with the EEOC for wrongful termination and retaliation under the ADA. My bankruptcy attorney told me

I did not have to include it in the petition for bankruptcy because no case had been filed with the Court." (ECF No. 20, PageID.296.)

In June 2017, Williamson amended his Chapter 13 plan. In a cover sheet for the amendments, Williamson indicated that he was amending Schedule D, E/F, I, and J. *See* Cover Sheet for Amendments, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. June 22, 2017). Williamson did not indicate that he was amending Schedule A/B (the one asking about "contingent and unliquidated claims of every nature"). *See id.* Williamson signed the cover sheet: "I declare under penalty of perjury that I have read this cover sheet and the attached schedules, lists, statements, etc., and that they are true and correct to the best of my knowledge, information and belief." *Id.* Shortly after filing the cover sheet and the amended schedules, Williamson filed an amended plan. Pre-Confirmation Modification #1, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. June 23, 2017). Williamson and his bankruptcy counsel also signed the amended plan (but not under penalty of perjury). *Id.*

By October 2017, the EEOC had issued Williamson a right to sue letter and on October 11, 2017 Williamson filed this lawsuit against USF Holland. (*See* ECF No. 1.) Like the EEOC charge, the complaint filed with this Court accused USF Holland of not accommodating Williamson's disability and of terminating him on account of his disability and for requesting accommodations. (ECF No. 1, PageID.3.)

Meanwhile, Williamson's case in the bankruptcy court was moving along. Creditors and the Chapter 13 trustee filed some objections to Williamson's proposed plan. An adversary proceeding about a construction lien was settled. And in December 2017, Williamson and his bankruptcy counsel again filed a coversheet for amendments with attached amended schedules. Cover Sheet for Amendments, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. Dec. 18,

3

2017). The cover sheet checked boxes indicating amendments to Schedule I and J but, as before, not the box associated with a Schedule A/B amendment. *Id.* And, as before, Williamson signed the coversheet and indicated that he had read the "cover sheet and the attached schedules, lists, statements, etc., and that they [were] true and correct to the best of [his] knowledge, information and belief." *Id.* Also as before, Williamson and his bankruptcy counsel prepared an amended bankruptcy plan. Williamson and his bankruptcy counsel signed the amended plan on December 19, 2017—but for some reason it was not filed until January 31, 2018. Pre-Confirmation Modification #2, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. Jan. 31, 2018).

Perhaps the filing delay had something to do with Williamson's visit to his bankruptcy attorney's office in January 2018. That month, Williamson asked his counsel in this case (ADA counsel) if USF Holland could be held liable for making him file bankruptcy. (ECF No. 20, PageID.296.) According to Williamson's ADA counsel, "Aware of the consequences of Judicial Estoppel I inquired as to whether [Williamson] had listed this case as an asset in the bankruptcy court." (ECF No. 20, PageID.379.) According to Williamson, "I told [my ADA counsel] that according to my bankruptcy attorney, I didn't need to list it because the case had not yet been filed." (ECF No. 20, PageID.296.) Williamson adds: "[my ADA counsel] told me I had to immediately go to my bankruptcy attorney's office and have him file an amendment with the bankruptcy court listing the ADA case." (*Id.*)

So Williamson went. And he conveyed to his bankruptcy counsel what his ADA counsel had told him. (*Id.*) But Williamson's bankruptcy counsel was unconvinced. (*Id.*) So Williamson's bankruptcy counsel called his ADA counsel while Williamson was still in the office. (*Id.*) According to Williamson's ADA counsel, "[Williamson's bankruptcy counsel] disagreed with my analysis, but having dealt with this issue on numerous occasions, I was able to convince him of

the necessity to file an amendment. I hung up with [bankruptcy counsel] with the belief he would be filing an amendment." (ECF No. 20, PageID.380.) Williamson was under a similar belief: "When I left my bankruptcy attorney's office in January of 2018 I was under the impression he would be filing an amendment to the petition." (ECF No. 20, PageID.297.)

Williamson and his ADA counsel have provided some emails supporting their account. On January 24, 2018, Williamson's bankruptcy attorney sent his ADA counsel an email; it stated, "When you have the opportunity: please shoot me a copy of the retainer agreement with Mr. Williamson in his EEOC claim." (ECF No. 20, PageID.382.)[1] And on February 5, 2018, Williamson's bankruptcy attorney sent his ADA counsel another email: "I'm looking for the retainer agreement for Mr. Williamson so you may be appointed as counsel for the [bankruptcy] estate and be paid when the case settles." (ECF No. 20, PageID.383.)

Still, no amended Schedule A/B was filed in January, February, or March 2018. Nor was any cover sheet filed in which Williamson attested to the accuracy of any amended schedules. True, as noted, Williamson's bankruptcy counsel filed an amended plan on January 31, 2018. But that plan was signed on December 19, 2017. *See* Pre-Confirmation Modification #2, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. Jan. 31, 2018).

On March 29, 2018, the bankruptcy court confirmed Williamson's bankruptcy plan (apparently the second amended filed on January 31, 2018). *See In re Williamson*, No. 17-45616-pjs, slip order (Bankr. E.D. Mich. Mar. 29, 2018). As Williamson's bankruptcy was under Chapter 13 (as opposed to Chapter 7) the confirmed plan required Williamson to make five years' worth

---

[1] Oddly, one version of this email Williamson has provided to this Court begins, "*Thanks for speaking to me*, When you have the opportunity . . ." while a second version of this email (also provided by Williamson) begins, "Thanks for speaking to me *& Mr. Williamson while he was in my office*. When you have the opportunity . . ." (*Compare* ECF No. 20, PageID.382 (emphasis added), *with* ECF No. 20, PageID.383 (emphasis added).)

5

of monthly payments of about $1,600. *See* Pre-Confirmation Modification #2, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. Jan. 31, 2018).

In June 2018, USF Holland's counsel sent Williamson's ADA counsel an email; the email informed that Williamson had not disclosed his case against USF Holland in his bankruptcy filings. That, apparently, came as a surprise to Williamson's ADA counsel. He explains, "This was the first time I had been advised that bankruptcy counsel did not file the amendment to the petition so I confirmed that it had not been filed and contacted Mr. Williamson [to] rectify the situation." (ECF No. 20, PageID.380.) Williamson recalls, "I immediately went to the bankruptcy attorney's office and told him to file the amendment. He had me sign the Amended Petition which was dated January 24, 2018 and gave me a document stating: 'The Amendment that was prepared in Late January is being filed today. (Disclosing the interest of Williamson's [bankruptcy] estate in the Claim.'" (ECF No. 20, PageID.297.)

Viewed in the light most favorable to Williamson, it does appear that Williamson's bankruptcy attorney had drafted an amended Schedule A/B on or around January 24, 2018. Williamson has provided the Court with a draft cover sheet for amendments that is dated January 24, 2018; the draft cover sheet indicates amendments to Schedule A/B. (ECF No. 20, PageID.390.) Williamson has also provided the Court with a draft Schedule A/B that includes an answer to Question 34 ("[o]ther contingent or unliquidated claims of every nature"); the answer states, "Claim arising from Employment (Contingent and Unliquidated)[.] Debtor Believes claim may be settled. [Amount:] Unknown." (ECF No. 20, PageID.400.) It appears that this amended Schedule

A/B was drafted on January 24, 2018 as "1/24/18 1:44PM" appears on each page. (ECF No. 20, PageID.400.)[2]

On July 3, 2018—more than three months after the bankruptcy court confirmed the bankruptcy plan—Williamson's bankruptcy counsel filed a cover sheet for amendments and filed an associated amended Schedule A/B. Although the particular document filed is not the same as the document Williamson signed in June 2018 and backdated to January 24, 2018, the content of the filing (at least as it pertains to this case) is the same:

> 34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims
> ☐ No
> ■ Yes. Describe each claim.........
>
> Claim arising from Employment (Contingent and Unliquidated)  Unknown
> Debtor Believes claim may be settled.

*See* Cover Sheet for Amendments, *In re Williamson*, No. 17-45616-pjs (Bankr. E.D. Mich. July 3, 2018).

In USF Holland's view, that disclosure was too little—and far too late. USF Holland says that the bankruptcy court relied on the schedules that did not mention any claims against it in confirming Williamson's bankruptcy plan. By omission, USF Holland says, Williamson made a representation to the bankruptcy court that there was no such claim. (ECF No. 17, PageID.73–74.) And yet, USF Holland complains, Williamson now seeks to recover on his ADA claims in this Court. (ECF No. 17, PageID.74.) Making contrary representations to two courts, USF Holland

---

[2] Here too there is something odd about Williamson's evidence. In connection with the draft cover sheet and the draft schedule, both dated January 24, 2018, Williamson has provided the Court with a draft proof of service, also dated January 24, 2018. But the proof of service indicates amendments to Schedule I and J—not Schedule A/B. And Schedule I and J were the schedules amended in December 2017. Further, one interpretation of Williamson's brief is that he signed the draft Schedule A/B on January 24, 2018. (ECF No. 20, PageID.288.) But, in his affidavit, Williamson plainly says that he signed it in June 2018 and backdated it to January 24, 2018. (ECF No. 20, PageID.297.)

7

concludes, warrants judicially estopping Williamson from pursing this lawsuit. (ECF No. 17, PageID.73–80.) So USF Williamson has moved for judgment in its favor.

## II.

USF Holland initially sought judgment under Rule 12(c). But Williamson attached affidavits and emails to his response, so the Court converted USF Holland's motion for judgment on the pleadings to one for summary judgment. (ECF No. 22.) The Court asked the parties if they wanted to supplement their briefs with additional evidence; USF said no (ECF No. 23); Williamson did not answer. So the Court proceeds on the record as it stands.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

### A.

The law helps identify the precise point of disagreement. Judicial estoppel aims at preserving the integrity of the judicial process by prohibiting a party from "changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). Because it is an equitable doctrine, no rigid framework governs a court's application of judicial estoppel. *See New Hampshire*, 532 U.S. at 750; *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules."); *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 313 (6th Cir. 2018) ("[J]udicial estoppel has not been reduced to a hard-and-fast test."). Still, there are certain considerations that inform a court's discretion: whether Williamson "assumed a position that was contrary to the one that []he asserted under oath in the bankruptcy proceedings," whether "the bankruptcy court adopted the contrary

8

position either as a preliminary matter or as part of a final disposition," and whether Williamson's omission "result[ed] from mistake or inadvertence." *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010); *Davis*, 747 F. App'x at 313. The parties' dispute centers on the third consideration.

And their dispute narrows still further. "In determining whether [Williamson's] conduct resulted from mistake or inadvertence, this court considers whether: (1) [he] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478. Here, the parties' dispute centers on whether "the evidence indicates an absence of bad faith." (*See* ECF No. 20, PageID.289; ECF No. 21.) In resolving that dispute, this Court looks at Williamson's "attempts to advise the bankruptcy court of h[is] omitted claim." *Id.*; *see also Slater v. United States Steel Corp.*, 871 F.3d 1174, 1185 (11th Cir. 2017) (en banc) (providing that in evaluating debtor's intent in omitting a claim from his bankruptcy filings, "a court should look to all the facts and circumstances").

In Williamson's view, the evidence indicates that he did not act in bad faith and that he made attempts to disclose his case against USF Holland. While none of Williamson's pre-confirmation filings informed the bankruptcy court about his ADA claims, that was not *his* fault, he says. It was his bankruptcy counsel's. Before filing for bankruptcy, Williamson says he raised the issue with his bankruptcy counsel. But his bankruptcy counsel told him he did not need to include the claim against USF Holland in the petition. Then, after Williamson's ADA counsel educated him otherwise, and he and his ADA counsel convinced his bankruptcy counsel to disclose the claim to the bankruptcy court, his bankruptcy counsel failed to do so. Williams says that when he left his bankruptcy counsel's "office in January of 2018 [he] was under the impression [that bankruptcy counsel] would be filing an amendment to the petition" to include the ADA claims.

9

(ECF No. 20, PageID.297.) But unknown to Williamson, his bankruptcy counsel did not follow through. So, in Williamson's view, the evidence indicates no bad faith on his part; he wanted to and tried to tell the bankruptcy court about his ADA claims only to be thwarted by his bankruptcy attorney.

Generally speaking, a client's attempt to place litigation misconduct at the feet of his counsel does not get him very far. That is because the client "voluntarily" chooses his "attorney as his representative in the action" and cannot "avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34 (1962). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* (internal quotation marks omitted); *see also Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003) ("Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea."), *other aspects overruled by Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017).

But in a different context, the Sixth Circuit has indicated that outright dismissal of a client's case because of his attorney's actions might be too harsh. *See Coleman v. American Red Cross*, 23 F.3d 1091, 1094–95 (6th Cir. 1994) ("Despite the Supreme Court's unequivocal language [in *Link*], this court, like many others, has been extremely reluctant to uphold the dismissal of a case merely to discipline an attorney.").

So if a client's disclosure of a claim to his bankruptcy counsel followed by his counsel's failure to tell the bankruptcy court is sometimes good reason not to apply judicial estoppel, the question becomes where to draw the line. Two cases help with that task.

10

In *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420 (6th Cir. 2005), Crystal Lewis believed she had been terminated from Weyerhaeuser on account of her "sex, race, and pregnancy status." *Id.* at 422. But when she filed for Chapter 13 bankruptcy two months after her termination, she failed to disclose both her income from Weyerhaeuser and her discrimination claim against the company. *Id.* Yet, once her Chapter 13 plan was confirmed, Lewis filed a discrimination suit against Weyerhaeuser. *Id.* Weyerhaeuser invoked judicial estoppel and the district court granted summary judgment. In affirming that grant, the Sixth Circuit found "unpersuasive Lewis's assertion that she relied in good faith on the advice of her attorney's paralegal." *Id.* at 427. Lewis claimed that she told the paralegal about her claim against Weyerhaeuser but for some reason the paralegal or Lewis' attorney decided not to relay that information to the bankruptcy court. *Id.* at 427. In finding that there was no reason to "depart[] from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys," *id.* at 427–28, the Sixth Circuit noted that Lewis was not totally free from fault. While Lewis might have been forgiven for not knowing the precise meaning of "[o]ther contingent and unliquidated claims of every nature," she should have been able to properly answer the petition's question about her income. *Id.* at 428. But she did not. That omission, the importance of disclosing all assets to the bankruptcy court, and the fact that she filed her EEOC charge one month after plan confirmation, collectively justified the application of judicial estoppel. *Id.* at 428–29.

Similar to Lewis, Betsy White also did not disclose her claim against her employer in her Chapter 13 bankruptcy petition. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 474 (6th Cir. 2010). Yet, the day after a hearing on plan-confirmation, she sued her employer. That prompted White's employer to seek dismissal on grounds of judicial estoppel, which in turn prompted White to amend one of her bankruptcy papers to disclose the claim (the claim remained

11

unlisted on White's Schedule A/B). *Id.* at 475. White responded to her employer's motion to dismiss with an affidavit from her bankruptcy counsel. *Id.* Her counsel averred that White had "inform[ed]" him of the claim, that "[a]t no time did Ms. White attempt to conceal, or otherwise[] keep [the claim] secret," that he had "discussed" the claim at a bankruptcy proceeding, and that he was "unsure why documentation filed in her bankruptcy matter" did not disclose the claim. *Id.* Even so, the district court applied judicial estoppel. And the Sixth Circuit affirmed. It explained that White's counsel's statement that he was "unsure" why the claim had not been disclosed left open the possibility that it was "her mistake." *Id.* at 484. Moreover, the Sixth Circuit reasoned, White should have been tipped off that she needed to include her claim against her employer given that her petition listed another proceeding. *Id.* And "[b]y signing [the petition], she swore, under penalty of perjury, that the filing was accurate." *Id.* As "the mistake [did] not lie solely with White's attorney," and because her attorney's affidavit did not clearly say that the fault was not White's, the Sixth Circuit again did "not deviate from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys." *Id.* (internal quotation marks omitted).

Returning to the facts of this case, a case could be made that Williamson is less blameworthy than Lewis and White. In contrast to Lewis who failed to list even her wages from her employer in her petition, Williamson could have reasonably relied on bankruptcy counsel's advice that a then-nascent claim against USF Holland did not have to be included in his petition. After all, Williamson had not sued USF Holland at the time he filed for bankruptcy. And in contrast to White who merely told her bankruptcy counsel about her employment claim, Williamson took the further step of persuading his bankruptcy counsel to disclose his employment claim and left his bankruptcy counsel's office under the "impression" that it would be disclosed.

Still, Williamson was not blameless, and not blameless enough to avoid *Link*'s rule.

12

First consider Williamson's explanation for not including his claim against USF Holland when he initially filed his petition. Williamson says that when he asked his bankruptcy counsel about his EEOC charge, his bankruptcy counsel told him that "[he] did not have to include it in the petition for bankruptcy *because no case had been filed with the Court*." (ECF No. 20, PageID.296 ¶ 12 (emphasis added); *accord id.* ¶ 16 ("I told [my ADA counsel] that according to my bankruptcy attorney, I didn't need to list it *because the case had not yet been filed*." (emphasis added)).) But by October 2017, Williamson had filed suit against USF Holland. And Williamson does not say that he tried to amend his schedules in October, November, or December 2017 to include the suit. He does not even say that he went back to his bankruptcy counsel in those months to ask if the initiation of a federal lawsuit changed anything with respect to disclosure obligations. And Williamson knew that his bankruptcy schedules could be amended: he had filed amended schedules before filing suit against USF Holland.

Next consider Williamson's actions when he finally learned that his suit against USF Holland had to be disclosed to the bankruptcy court. According to Williamson's ADA counsel, "I counseled Mr. Williamson on judicial estoppel [and] impressed upon him the importance of having his petition amended." Fully informed that non-disclosure could lead to his suit being dismissed, Williamson should have made sure that his ADA claim was disclosed to the bankruptcy court. Yet Williamson's efforts were sub-maximal. True, after being "impressed upon" by his ADA counsel, Williamson went to his bankruptcy counsel's office in January 2018 and convinced his bankruptcy counsel to disclose the suit against USF Holland to the bankruptcy court. But by that point, Williamson had twice amended his schedules and twice signed the associated cover sheet swearing that he had reviewed the amended schedules. So Williamson knew (or should have known) that for his bankruptcy counsel to disclose the ADA claim to the bankruptcy court, his bankruptcy

13

counsel would have to file amended schedules, which, in turn would require his review, attestation, and signature. Yet Williamson has no evidence that he reviewed an amended schedule disclosing his claim against USF Holland and signed the associated coversheet before plan confirmation. (He did ultimately do that, but months after confirmation. (ECF No. 20, PageID.297.)) Nor does Williamson even say that after he left his bankruptcy counsel's office in January 2018 he (or his ADA counsel) ever followed up with bankruptcy counsel, the bankruptcy court, or the bankruptcy trustee to confirm the suit against USF Holland had been disclosed. As far as the record shows, Williamson (and his ADA counsel) sat idly by while the bankruptcy case proceeded to confirmation.

To summarize, Williamson's claim against USF Holland was not timely disclosed to the bankruptcy court. True, when taking the record in the light most favorable to Williamson, the omission was in large part the fault of Williamson's bankruptcy counsel. But there is little doubt that Williamson should have done more to ensure disclosure. And so the Court is not compelled to deviate from the general rule of *Link*. It follows that no reasonable jury could find that "the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478.

In resisting this result, Williamson's relies heavily on *Stephenson v. Malloy*, 700 F.3d 265 (6th Cir. 2012). But that case arguably hurts Williamson's position more than helps it, for it shows what Williamson might have done to avoid estoppel. In *Malloy*, Senan Al-Mansoob did not disclose his claim against a negligent driver to the bankruptcy court. *Id.* at 266–67. But he had disclosed his suit against the auto insurer arising from the same accident. *Id.* at 268. Not only that, the bankruptcy trustee averred that, before Al-Mansoob's debts were discharged, he had known about the suit against the other driver. *Id.* at 269. Indeed, Al-Mansoob's counsel in the auto-negligence case had sent the trustee a letter stating, "our firm represents Mr. Almansoob [sic] in

14

both a first and third party auto case currently pending in the Court." *Id.* And, before discharge, a copy of the complaint against the other driver was sent to the trustee. *Id.* In other words, Al-Mansoob's counsel in the auto-negligence case had "communicated freely about [the case] with the trustee from nearly the inception of the bankruptcy proceeding, repeatedly seeking the trustee's guidance as to how the litigation should be handled." *Id.* at 275. Williamson has no facts suggesting that the bankruptcy trustee in his bankruptcy case ever knew about his suit against USF Holland. Indeed, he does not even have evidence that he or his ADA counsel made any effort to contact the trustee about the suit. So *Malloy* is more hurt than help to Williamson.

**B.**

While the foregoing suffices to address what might be called the "elements" of judicial estoppel, the doctrine is, at bottom, equitable in nature and, as noted, "has not been reduced to a hard-and-fast test." *Davis*, 747 F. App'x at 313. Here, an argument could be made that an equitable thing to do is to require Williamson to make things right in the bankruptcy court. USF Holland is the winner if this Court applies judicial estoppel; yet USF Holland may not have been prejudiced by an omission in Williamson's bankruptcy papers; and it is USF Holland that has been accused of discriminating. And applying judicial estoppel in this case ends any hope creditors might have in obtaining a slice of damages recovered from USF Holland. So, arguably, an equitable thing to do would be to order Williamson to ask the bankruptcy court to consider a new plan, one that accounts for the expected value of this lawsuit, and then, if the bankruptcy court confirms a new plan, allow Williamson or the trustee to pursue this case. *Cf. White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 485 (6th Cir. 2010) (Clay, J., dissenting) ("Plaintiff's creditors, who would have had a right to recover from any judgment in favor of Plaintiff, are blameless in this dispute. . . . Meanwhile, Defendant stands accused of allowing sexual harassment in the

workplace and would suffer no unfair detriment from Plaintiff's alleged inconsistent positions, since it had no stake in the bankruptcy proceedings.").

But no one has asked this Court to do that. And another fair remedy is simply to dismiss this case. As discussed, Williamson is partly to blame for this case not being disclosed to the bankruptcy court or trustee. *See Slater v. United States Steel Corp.*, 871 F.3d 1174, 1187 (11th Cir. 2017) ("When a district court applies a judicial estoppel bar based on nondisclosure in a bankruptcy proceeding *without* determining that the plaintiff deliberately intended to mislead, the civil defendant avoids liability on an otherwise potentially meritorious civil claim while providing no corresponding benefit to the court system." (emphasis added)). And, because Williamson's bankruptcy plan has already been confirmed, absent a plan modification, it will be Williamson, not his creditors, who will take home any money recovered from USF Holland. Moreover, unwinding the bankruptcy proceeding would, effectively, give Williamson a do-over in the bankruptcy court when he is partly to blame for not getting it right the first time. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them."), *other aspects overruled by Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017); *accord White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 482 n.10 (6th Cir. 2010) (reasoning that unwinding the bankruptcy proceeding "'would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.'" (quoting *Barger*, 348 F.3d at 1297)).

## IV.

For the foregoing reasons, the Court GRANTS USF Holland's motion for summary judgment.

SO ORDERED.

                               s/Laurie J. Michelson
                               LAURIE J. MICHELSON
                               UNITED STATES DISTRICT JUDGE

Date: March 26, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 26, 2019, using the Court's Electronic Court Filing system.

                               s/William Barkholz
                               Case Manager